**FILED**
DEC 1 3 2007

FILED DEC 1 3 2007

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>One World Capital Group, LLC and<br>John Edward Walsh,<br><br>Defendants. | ) 07CV 7002<br>) JUDGE LEFKOW<br>) MAGISTRATE JUDGE KEYS |

### COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT

### I.   SUMMARY

1. Since at least November 28, 2007 ("relevant time"), Defendant One World Capital Group, LLC ("One World"), a futures commission merchant ("FCM") registered with the Commodity Futures Trading Commission ("CFTC" or "Commission") and a forex dealer member ("FDM") of the National Futures Association ("NFA"), has been unable to demonstrate compliance with the minimum adjusted net capital of $1,000,000 required by the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 *et seq.* (2002), and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2007).

2. As a registered FCM and NFA FDM, One World has solicited and accepted retail customer funds for the purpose of acting as a counterparty, or offering to act as the counterparty,

1

to foreign currency ("forex") transactions. One World also has solicited and accepted customer funds for the purpose of trading exchange traded futures contracts.

3. On November 28, 2007, NFA staff commenced an audit of One World. As part of that audit, the NFA required One World to provide a net capital computation for November 27, 2007 by 4:00 p.m. that day. To date, One World has not provided any net capital computation, nor has it provided adequate documentation for its assets or liabilities, and in particular it has not provided any support for its liabilities to customers holding forex accounts.

4. On November 27, 2007, One World filed a required monthly financial report known as a Form 1-FR-FCM ("1-FR") with the NFA and the CFTC, reporting assets and liabilities, as of October 31, 2007. The 1-FR purported to show that, as of the end of October, the firm's total current assets were $2,387,427, its total liabilities were $1,160,200, including $357,053 attributable to liabilities to forex customers, and its excess net capital was $227,227.

5. On November 23, 2007, One World filed a weekly forex report with the NFA stating that, as of November 23, 2007, its liabilities to forex customers purportedly were $538,515.

6. However, since at least November 2, 2007, NFA staff members have been receiving complaints from One World forex customers to the effect that One World is not returning funds in response to customers' withdrawal requests. The aggregate amount claimed by the complaining One World forex customers is at least $4,000,000, an amount that substantially exceeds the $538,515 that One World reported to NFA as of November 23, 2007.

7. Since November 28, 2007, the NFA has requested One World to supply supporting documentation for its reported forex liabilities. To date, One World has failed to provide any third party documentation or other support for its forex liabilities.

8. On December 3, 2007, staff from the CFTC's Division of Clearing and Intermediary Oversight ("DCIO") requested that One World provide daily net capital computations. On December 4, 2007, John Edward Walsh ("Walsh"), the President of One World, told Frank Zimmerle, Branch Chief for DCIO in the CFTC's Chicago office, that Walsh could not make his net capital calculation because he was unable to provide information as to the forex customer liabilities.

9. By virtue of their conduct, the Defendants have engaged, are engaging, or are about to engage in acts and practices that violate Sections 4f(a) and 4f(b) of the Act, 7 U.S.C. §§ 6f(a) and 6f(b) (2002) and Commission Regulations ("Regulations") 1.17(a)(4) and 1.18, 17 C.F.R. §§ 1.17(a)(4) and 1.18 (2007)

10. Accordingly, the Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act. In addition, the Commission seeks restitution to investors for damages proximately caused by Defendants' violations, civil monetary penalties and such other relief as this Court may deem necessary and appropriate.

11. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

12. The Act establishes a comprehensive system for regulating commodity futures contracts and options on commodity futures contracts and those who are registrants pursuant to the Act. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged,

is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper District Court of the United States against such person to enjoin such practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

13. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because One World's administrative and compliance office is located in this District, Walsh resides in this District, and acts and practices in violation of the Act have occurred within this District.

### III. THE PARTIES

14. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with administering and enforcing the Act, 7 U.S.C. §§ 1 et seq. (2002), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2007).

15. Defendant **One World Capital Group, LLP** is a New York Limited Liability Company formed on August 31, 2005. Its principal place of business is 818 Elm Street in Winnetka, Illinois 60093. One World has been registered with the Commission as a FCM since December 6, 2005, and as a Commodity Trading Advisor ("CTA") since May 17, 2007. One World is also a FDM.

16. Defendant **John "Jack" Edward Walsh** is 59 years old and resides in Lake Forest, Illinois. Walsh is the managing member and the President of One World. Walsh has been registered with the NFA in various capacities from February 1997 to October 2000, and July 2001 to November 30, 2007. From December 2005 to November 30, 2007, Walsh was registered with the NFA as an associated person ("AP") of One World. At all relevant times,

4

Walsh has controlled One World. Walsh signs management reports on behalf of One World, has access to One World's bank accounts, and supervises One World's employees.

## IV. THE FACTS

### A. Statutory and Regulatory Background

17. The NFA is a registered futures association pursuant to Section 17 of the Act, 7 U.S.C. § 21. It is the industry wide, independent, self-regulatory organization for the U.S. futures industry. Its mission is to develop rules, programs and services that safeguard market integrity, protect investors and help its Members meet their regulatory responsibilities.

18. An FCM is defined in Section 1a(12) of the Act, 7 U.S.C. § 1a(12), as an individual, association, partnership, corporation, or trust that: (i) is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market; and (ii) in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts. An FCM typically handles the mechanics of order entry, confirmation, clearance and settlement of trades, calculation of margin, and similar activities on behalf of the customers for whom it carries trading accounts.

19. Section 4f(b) of the Act, 7 U.S.C. § 6f(b), requires an FCM at all times to meet such minimum financial requirements as the Commission may prescribe as necessary to insure that the FCM is meeting its obligations as a registrant. These requirements are designed to protect both the customers of the FCM and other participants in the market.

20. FDM members of NFA are defined by NFA Bylaw 306(a) as FCMs that are the counterparty or that offer to be the counterparty to forex transactions.

5

21.     Effective July 31, 2006, all FCMs acting as FDMs have been required by Regulation 1.17(a)(1)(C), 17 C.F.R. § 1.17(a)(1)(C), and Section 11 of NFA's Financial Requirements to maintain adjusted net capital of $1,000,000 to ensure that they can meet their financial obligations. Pursuant to Regulation 1.17(c)(1), "net capital" is the amount by which current assets exceed liabilities.

**B.    One World's Business Background**

22.     One World has maintained at least five forex related internet websites at various times during its registration as an FCM and CTA. These websites include www.1worldfcm.com, www.1world-forex.com, www.1wfx.com, www.1worldchina.com and www.owforex.com.

23.     At least two of the One World websites, 1worldfcm.com and 1world-forex.com, have touted One World's registration status with the NFA and oversight by the CFTC. The 1world-forex.com website currently states:

> A registered Futures Commission Merchant (FCM), One World Capital Group LLC is a member of the National Futures Association (NFA) and is regulated by the Commodity Futures Trading Commission (CFTC). Interested parties can visit the NFA web site at any time to review One World Capital Group's unblemished record as an NFA member. NFA ID #0359973.

24.     Since December 4, 2007, the 1worldfcm.com website removed its content and only directs the reader to contact Walsh with questions, listing the One World office number.

25.     Since December 2005, One World has acted as a FDM in that it was the counterparty or offered to be the counterparty to off-exchange forex transactions with domestic and foreign retail customers. One World also provides services to customers in connection with off-exchange forex trading, including managed accounts. Walsh has represented to the NFA that One World currently carries in excess of 2,000 customer accounts trading forex through Metatrader, an electronic trading platform licensed to One World by Moneytec.

6

26. Since at least December 2005, One World also carried accounts for retail customers that traded exchange-traded futures contracts. At least as of December 7, 2007, One World continued to hold the funds of some of its customers who traded exchange-traded futures contracts.

### C. NFA Business Conduct Committee Action

27. On June 4, 2007, the NFA filed a Business Conduct Committee ("BCC") Complaint against One World and Walsh alleging, among other things, that one month after One World became registered, it had failed to meet its minimum adjusted net capital requirements as of January 31, 2006. Specifically, the NFA asserted that One World failed to include customer liabilities in its financial statements.

28. On November 14, 2007, the NFA issued a Decision in which it accepted Walsh's and One World's offer of settlement. The Decision recites that One World and Walsh consented to findings that they committed the violations alleged against them in the BCC complaint. As noted in the Decision, the acceptance of the settlement did not relieve One World of its obligation to comply with all NFA requirements, including adjusted net capital requirements for FCMs that are also FDMs.

### D. NFA Member Responsibility Action

29. On November 28, 2007, the NFA commenced an audit of One World. Pursuant to the audit, NFA sent staff to One World's Winnetka office. During the course of this audit, Walsh has denied audit staff's access to the office and to customer account files. Walsh also has failed to provide NFA staff copies of, or access to, bank records and forex trading account statements.

30. On November 30, 2007, the NFA filed a Notice of Member Responsibility Action ("MRA") against One World alleging that One World and Walsh have failed to cooperate

7

promptly and fully with the NFA in an NFA audit, and that One World failed to produce adequate and complete support for certain material asset and liability balances. NFA filed the MRA to protect customers because it is unable to verify that One World is in full compliance with the NFA's capital and other financial requirements. The MRA notified One World and Walsh that, inasmuch as One World was unable to demonstrate compliance with the minimum financial requirements, One World is required to cease doing business, including the solicitation or acceptance of any additional customer funds, and can only accept or place trades for liquidation purposes until such time as it has demonstrated it has in place the required capitalization, pursuant to Regulation 1.17(a)(4).

31. NFA staff has attempted to obtain supporting financial records from One World relating to their net capital computation to aid in determining their current net capital and customer liabilities. To date, Walsh has failed to cooperate with NFA staff and has failed to provide books and records to the NFA. Walsh also has prohibited One World employees from providing books and records to the NFA, including information relating to One World's financial condition, in particular forex liabilities.

32. On December 3, 2007, CFTC staff sent a letter to Walsh and One World requesting, among other things, that One World provide a current net capital computation. To date, One World and Walsh have failed to provide the requested information.

33. Despite the NFA's and CFTC's attempts to obtain records and capital computations, Walsh has failed to produce the requested books and records and actively prevented the release of books and records. Since December 3, 2007, Walsh has also failed to provide required net capital computations in violation of the Act and Regulations. In so doing,

Walsh has knowingly induced, directly or indirectly, One World's violation of the Act and Regulations or has failed to act in good faith with respect to these violations.

### E. One World Has Failed to Demonstrate Compliance With the Minimum Adjusted Net Capital Requirements of the Act and Regulations

34. As a registered FCM, One World is required pursuant to Regulation 1.10(a)-(d), 17 C.F.R. §§ 1.10(a)-(d), to submit a monthly report to the CFTC and NFA that includes a statement of financial condition and a statement of the computation of the minimal adjusted net capital requirements on a form designated as a 1-FR-FCM ("1-FR").

35. One World's most recently filed 1-FR report purports to show that as of October 31, 2007, One World had $357,053 in liabilities to forex customers. NFA staff asked for support for that number and, to date, has not received any supporting information from One World or its principal, John Walsh. Additionally, on December 4, 2007, Walsh informed Frank Zimmerle, the DCIO Branch Chief in the CFTC's Chicago, Illinois office, that Walsh "cannot determine what he owes to forex customers, nor can he say whether he has sufficient funds with which to pay those forex customers."

36. During the pendency of the NFA's current audit and the CFTC's information requests, Walsh has claimed and continues to claim that he does not have access to forex customer information, contending that Moneytec will not allow Walsh access to the information. However, a representative of Moneytec has denied Walsh's claim and asserted that Walsh and One World employees have access to the records that could provide customers names, account numbers and account balances. Furthermore, on December 5, 2007, in response to an NFA staff request for a list of One World's forex customers and account balances, a member of One World's staff stated that One World did have access to that information, but that he could not provide it because Walsh specifically instructed him not to disclose it.

9

37. As part of the NFA audit, as of December 5, 2007, the NFA was able to confirm through third-party documentation that One World has $554,422 in forex customer accounts. To date, this is the only amount the NFA is able to confirm as assets of One World.

38. Since November 2, 2007, the NFA has received numerous complaints from customers stating that One World has not satisfied customer withdrawal requests. According to the complaints, Walsh has told customers that he would wire the funds to customers, but no funds were ever received. Additionally, Walsh has provided numerous excuses regarding One World's inability or failure to provide customers' their funds. For example, Walsh has informed customers that: 1) the NFA would not allow him to transfer funds to customers; 2) he had been sick; 3) he had been traveling; and 4) he was locked out of one office and did not have a fax machine in another office. The aggregate amounts claimed by these customers exceed $4,200,000.

## V. VIOLATION OF THE COMMODITY EXCHANGE ACT AND COMMISSION'S REGULATIONS

### COUNT ONE:

### VIOLATIONS OF SECTION 4f(b) OF THE ACT AND REGULATION 1.17(a)(4):

### FAILURE TO COMPLY WITH THE COMMISSION'S MINIMUM FINANCIAL REQUIREMENTS

39. The allegations set forth in paragraphs 1 through 38 are re-alleged and incorporated by reference.

40. Pursuant to Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.17(a)(1)(C), 17 C.F.R. §1.17(a)(1)(C), all FCMs acting as FDMs are required to maintain a minimum adjusted net capital of $1,000,000.

41. Pursuant to Regulation 1.17(a)(4), 17 C.F.R. § 1.17(a)(4), an FCM that is not in compliance with Regulation 1.17, or is unable to demonstrate such compliance, must transfer all customer accounts and immediately cease doing business as a FCM until such time as it can demonstrate such compliance.

42. Since at least November 28, 2007, One World has been unable to demonstrate compliance with the $1,000,000 minimum adjusted net capital requirement applicable to a FCM acting as a FDM, in violation of Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.17(a)(4), 17 C.F.R. § 1.17(a)(4).

43. Since at least November 28, 2007, One World has failed transfer all customer accounts and immediately cease doing business as a FCM until such time as it can demonstrate compliance the adjusted net capital requirements of Regulation 1.17(a)(1), in violation of Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.17(a)(4), 17 C.F.R. § 1.17(a)(4).

44. Each day One World fails to maintain and is unable to demonstrate compliance with the $1,000,000 minimum adjusted net capital requirement applicable to an FDM is alleged as separate and distinct violations of Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.17(a)(4), 17 C.F.R. § 1.17(a)(4).

45. Each day One World failed to transfer funds and/or continued doing business as a FCM without demonstrating compliance with its adjusted net capital requirement is alleged as separate and distinct violations of Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.17(a)(4), 17 C.F.R. § 1.17(a)(4).

46. Defendant Walsh controlled One World and either knowingly induced or did not act in good faith respecting the acts and practices of One World and its employees, officers, agents, directors, and/or principals that constitute the violations Section 4f(b) of the Act,

11

7 U.S.C. § 6f(b), and Regulation 1.17(a)(4), 17 C.F.R. § 1.17(a)(4). Defendant Walsh therefore is liable as a controlling person for those violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

## COUNT TWO:

### VIOLATIONS OF SECTION 4f(a)(1) OF THE ACT AND AND REGULATION 1.18:

### FAILURE TO MAINTAIN REQUIRED BOOKS AND RECORDS

47. The allegations set forth in paragraphs 1 through 38 are re-alleged and incorporated herein by reference.

48. Pursuant to Section 4f(a)(1) of the Act, 7 U.S.C. § 6f(a)(1), and Regulation 1.18, 17 C.F.R. § 1.18, One World is required to maintain records that currently reflect its assets, liabilities and capital. Because One World failed to maintain such records, it violated Section 4f(a)(1) of the Act and Regulation 1.18, 17 C.F.R. § 1.18.

49. Each day that One World failed to comply with its recordkeeping requirements is alleged as a separate and distinct violations of Section 4f(a) of the Act, 7 U.S.C. § 6f(a), and Regulation 1.18, 17 C.F.R. § 1.18.

50. Defendant Walsh controlled One World and either knowingly induced or did not act in good faith respecting the acts and practices of One World and its employees, officers, agents, directors, and/or principals that constitute the violations Section 4f(b) of the Act, 7 U.S.C. § 6f(b), and Regulation 1.18, 17 C.F.R. § 1.18. Defendant Walsh therefore is liable as a controlling person for those violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

### VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.  Enter an Order finding that Defendants violated Sections 4f(a) and 4f(b) of the Act, 7 U.S.C. §§ 6f(a) and 6f(b) (2002), and Regulations 1.17(a)(4) and 1.18, 17 C.F.R. §§ 1.17(a)(4) and 1.18 (2007);

B.  Enter a Restraining Order, *ex parte*, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1, restraining One World, Walsh and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, from directly or indirectly:

1. Destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of One World wherever located, including all such records concerning the Defendants' business operations;

2. Refusing to make available for inspection by the Commission, when as requested, any books, records, documents correspondence, brochures, manual, electronically stored data, tape records or other property of One World wherever located, including, but not limited to, all such records of One World's business operations;

3. Dissipating, withdrawing, transferring, removing, concealing or disposing of any cash, cashier's checks, funds, assets or other property of, or within the custody, control or actual or constructive possession of One World, including, but not limited to, all funds, personal property, money or securities held in One World's name, safety deposit boxes, all funds in deposit in any financial institution, bank or savings and loan account held by, under the actual or constructive control, or in the name of One World, funds or property of investors, wherever located, whether held in the name of the One World, Walsh or otherwise;

and Requiring:

4. One World to close all open customer positions, cease accepting customer orders, and to close all proprietary accounts held by it with any other foreign currency transaction entity; and

5. One World and Walsh to permit representatives of the plaintiff Commission to immediately inspect the books, records and other electronically stored data, tape recordings, and other documents of the Defendants and their agents, including all such records of Defendants' business operations, wherever they are situated and whether they are in the possession of the Defendants or others and to copy said

13

documents, data, and records either on or off the premises where they may be situated;

C.  Enter an order of preliminary injunction incorporating the provisions of the statutory restraining order and enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of such order by personal service or otherwise, from directly or indirectly violating Sections 4f(a) and 4b(f) of the Act, 7 U.S.C. §§ 6f(a) and 6f(b) (2002), and Regulations 1.17(a)(4) and 1.18, 17 C.F.R. §§ 1.17(a)(4), and 1.18 (2007);

D.  Enter an order of permanent injunction prohibiting and enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of such order by personal service or otherwise, from directly or indirectly violating Sections 4f(a) and 4f(b) of the Act, 7 U.S.C. §§ 6f(a) and 6f(b) (2002), and Regulations 1.17(a)(4) and 1.18, 17 C.F.R. §§ 1.17(a)(4), and 1.18 (2007);

E.  Enter orders of preliminary and permanent injunction enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly, engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

1. Engaging, directly or indirectly, in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

    a. trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

    b. engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

    c. entering into any commodity interest transactions for Walsh's personal account, or One World's proprietary account or for any account in which they have a direct or indirect interest and/or having any commodity interests traded on their behalf;

F. Enter an order requiring Walsh to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from the acts or practices which constitute violations of the Act as described herein, including pre-judgment interest;

G. Enter an Order directing the Defendants to each pay a civil monetary penalty in the amount of not more than the higher of (i) triple the monetary gain to Defendants for each violation of the Act and Regulations or (ii) $130,000 for each violation occurring after October 23, 2004;

H. Enter an order directing Defendants, jointly and severally, to make full restitution to every customer whose funds were lost as a result of acts and practices which constituted violations of the Act and Regulations, described herein, and interest thereon from the date of such violations;

I. Enter an Order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

J.  Enter an Order providing such other and further remedial ancillary relief as the Court may deem appropriate.

Dated: December 13, 2007

Respectfully submitted,

*[signature]*
Jennifer S. Diamond
Trial Attorney
ARDC No. 6278482

*[signature]*
Elizabeth M. Streit
Lead Trial Attorney
ARDC No. 06188119

*[signature]*
Scott R. Williamson
Deputy Regional Counsel
ARDC No. 06191293

Attorneys for Plaintiff

Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0549 (Diamond)
(312) 596-0537 (Streit)
(312) 596-0560 (Williamson)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)